UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRIAN S. MOORE, | ) |
|                 Plaintiff, | ) |
| v. | ) No. 1:23-cv-00555-SEB-TAB |
| MARIE KERN Magistrate, in her personal capacity, | ) |
| MEGAN L. GEHRING GAL, in her personal capacity, | ) |
| KRISTY L. MOORE in her personal capacity, | ) |
| ANGELA SWENSON in her personal capacity, | ) |
| MARION SUPERIOR COURTS, | ) |
| STATE OF INDIANA, | ) |
|                 Defendants. | ) |

**ORDER**

On March 31, 2023, Plaintiff Brian Moore ("Mr. Moore"), proceeding *pro se*, filed this lawsuit against six Defendants based on their involvement in Indiana state court child custody proceedings. Mr. Moore's central complaint is that he was harmed by a series of state-court orders, which, among other things, required that a third-party supervisor attend and monitor his parenting time with his two children.

Only Defendant Kristy L. Moore ("Ms. Moore"), Mr. Moore's ex-wife and the mother of their two children, has moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. Dkt. 6. Because we conclude that the *Rooker-Feldman* doctrine precludes our exercise of jurisdiction over Mr. Moore's Complaint, we

1

**GRANT** Ms. Moore's motion and dismiss this cause of action in its entirety for lack of subject matter jurisdiction.

## LEGAL STANDARD

We begin by noting that *pro se* complaints, such as the one filed by Mr. Gray, are construed liberally and held "to a less stringent standard than formal pleadings drafted by lawyers." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). Nevertheless, federal district courts must "consider subject-matter jurisdiction as the first question in every case" and "must dismiss th[e] suit if such jurisdiction is lacking." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017).

To prevail on a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the "burden of supporting the jurisdictional allegations of the complaint by competent proof." *Davis v. City of Indianapolis*, 656 F.Supp.3d 832, 837 (S.D. Ind. 2023) (internal citation omitted). Disregarding this burden, Mr. Moore has filed no responsive brief: In fact, according to the docket, Mr. Moore has submitted no filings in this cause of action since March 31, 2023, the date of his Complaint and Summons information. *See generally* dkt. 1, 2. In evaluating jurisdiction, courts accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003). Here, Mr. Moore has challenged the state court's orders regarding the child custody and parenting time arrangements with his ex-wife, Ms. Moore. Because these state court orders are both central to Mr. Moore's allegations and "are public records," we properly take judicial notice of the facts contained

therein. *Depuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 403 F.Supp.3d 690, 695 (S.D. Ind. 2019) (quoting *In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018)).

If no subject-matter jurisdiction exists, "the court must dismiss the complaint in its entirety," without reviewing the merits of the case. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). While the Seventh Circuit generally prefers that district courts provide plaintiffs with an opportunity to amend legally deficient complaints, no such allowance is necessary when the jurisdictional defect is uncurable. *See United States v. Furando*, 40 F.4th 567, 579 (7th Cir. 2022).

## FACTUAL & PROCEDURAL BACKGROUND

Except for a difference in some of the named Defendants, the instant Complaint repeats, almost verbatim, the factual and legal allegations that Mr. Moore previously filed in federal court. *See generally Moore v. Chavis*, No. 1:22-cv-01783-SEB-KMB (S.D. Ind.) (filed Sept. 9, 2022) ("*Moore I*"); Compl. ¶ 24, dkt. 1 (realleging paragraphs 42–77 from the *Moore I* complaint). In *Moore I*, we detailed the underlying factual background, realleged here by Mr. Moore, and ultimately dismissed the action for lack of subject-matter jurisdiction. *See generally Moore I*, No. 1:22-cv-01783-SEB-KMB, 2023 WL 3304747 (S.D. Ind. May 8, 2023). We recite those facts as relevant to our jurisdictional analysis.

In *Moore I*, Mr. Moore sued the Honorable John Chavis, Judge of the Marion County Superior Court ("Judge Chavis"), among others, challenging Judge Chavis's orders that limited Mr. Moore's parenting time and required third-party supervision. Mr. Moore took issue with Judge Chavis's alleged failure to make a finding of physical endangerment

3

or emotional impairment, as provided by Indiana Code section 31-14-4-1, before restricting a non-custodial parent's parenting time.[1]

Though Mr. Moore continues to take issue with Judge Chavis's management of the child custody proceedings, his instant Complaint focuses on the Honorable Marie Kern, Judge of the Marion County Superior Court ("Judge Kern"), for her involvement after the matter was transferred to her docket in January 2021.

Shortly after assuming responsibility for the case, Judge Kern denied Mr. Moore's pending Motions to Correct Error regarding unspecified "orders issued by Judge Chavis." Compl. ¶ 25, dkt. 1. On March 15, 2021, the parties convened for a hearing, during which Mr. Moore insisted that there was no basis for imposing the supervision requirement on his parenting time because there had never been a "statutorily required finding of endangerment." *Id.* ¶ 26. According to the Complaint, Judge Kern stated that Mr. Moore's parental rights had been "restricted" and that she could "not undo what Court 5 has done," which statement Mr. Moore contends "had a chilling effect" on him because he "had assumed that [Judge Kern] had jurisdiction over the case." *Id.*

On March 30, 2021, Mr. Moore, Ms. Moore, and Ms. Moore's attorney, Angela Swenson ("Ms. Swenson"), participated in private mediation. According to Mr. Moore, Judge Kern's statements at the March 15th hearing had placed him at a "distinct

---

[1] Indiana Code section 31-17-4-1(a) provides:

> A parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development.

4

disadvantage" during mediation because they led him to believe that the court had no "power to end the supervision of his parenting time" and that "it was entirely up to the parties to end" the required supervision of his parenting time. *Id.* ¶ 27. Mr. Moore further alleges that Judge Kern's "misrepresentations" regarding the court's "jurisdiction on the issue" ultimately supplied Mses. Moore and Swenson with greater leverage during mediation. Due to this imbalance in bargaining position, Mr. Moore contends, he "lost one weekend per month of parenting time" and was relegated to the Indiana Parenting Time Guidelines' ["IPTG"] minimum. *Id.*

That same day, Judge Kern approved the parties' Mediated Agreement, which provides the following:

> [Mr. Moore's] supervised parenting time shall continue. However, the goal is to phase in parenting time until [Mr. Moore] has IPTG parenting time in full. The phase-in to be completed within 6 months provided that the Reunification Therapist (RT) agrees upon and implements each phase-in and ultimately the IPTG. Once [Mr. Moore] achieves the IPTG parenting time, then that shall be the existing order for parenting time. And any change to that order shall require a new petition be filed with the Court.

*Id.* ¶ 28. By summer of 2021, Mr. Moore's supervised parenting time had been phased out and replaced with the IPTG minimum parenting time. Additionally, from late 2020 through early 2022, Mr. Moore and his two children attended family reunification therapy. On February 14, 2022, the reunification therapist allegedly recommended that Mr. Moore be allowed to attend the children's medical appointments. Pursuant to this recommendation, Mr. Moore requested a hearing with the court.

During the following months, the parties filed numerous motions not otherwise relevant to the issues before us. On September 9, 2022, Mr. Moore filed the *Moore I*

complaint. On December 5, 2022, he filed a Notice of Tort Claim against Judge Kern with the Indiana Attorney General, which was denied on February 21, 2023. Also on December 5, 2022, Mr. Moore filed in state court a "Verified Petition for Recusal of Magistrate Marie Kern and Change of Venue and Notice of Filing of Complaint to Judicial Qualifications Commission and Filing of Notice of Tort Claim," which Judge Kern denied the following day.

On December 7, 2022, Judge Kern convened a hearing, during which she explained to Mr. Moore that he must demonstrate a "substantial change in circumstances" to justify a modification of the parenting time supervision requirement, which standard Mr. Moore contends is "unattainable" and "illogical." *Id.* ¶ 36. He further avers that his relationship with both children has been strained by the child custody proceedings, specifically, the parenting time restrictions imposed by Judge Chavis and upheld by Judge Kern. Finally, Mr. Moore alleges that he has "exhausted all opportunities to have this deprivation legally rescinded."[2] *Id.* ¶ 39.

On March 31, 2023, Mr. Moore filed this federal lawsuit, alleging that Judge Kern violated his constitutional rights and caused financial and emotional harm by upholding Judge Chavis's orders on supervised parenting time without entering a finding of endangerment. Mr. Moore's Complaint advances four nearly identical counts to those asserted in his *Moore I* complaint. In Count I, Mr. Moore has brought a 42 U.S.C. § 1983 claim against

---

[2] As reflected in both the state court docket and Mr. Moore's own admissions in the *Moore I* complaint, Mr. Moore has indeed raised these issues on numerous occasions with the Indiana trial and appellate courts, but each of those efforts has failed.

6

Judge Kern alleging a violation of his Due Process rights under the Fourteenth Amendment to the United States Constitution, based on Judge Kern's "refus[al] to end [the] supervision" imposed by Judge Chavis's parenting orders. Compl. ¶ 50, dkt. 1. In Count II, Mr. Moore brings a claim of "Financial Deprivation Associated with Denial of Parenting Rights," averring that "he has incurred great financial cost of paying for the unwarranted Court Orders for Supervised Parenting Time, for various fees associated with requirements by the Court, and for loss of productive time and earnings as a result of continuing to challenge the unwarranted Court Orders for Supervised Parenting Time." *Id.* ¶ 54. Count III advances a claim against unspecified Defendants for "Alienation of Affections between Father and Children," alleging that his relationships with his children have been irreparably harmed by the court-ordered supervision of his parenting time. *Id.* ¶ 59. Lastly, in Count IV, Mr. Moore asserts that the State of Indiana, through Judge Kern, failed to provide an opportunity for a review and remedy of the parenting time restrictions, "as is done for all others," in violation of the Equal Protection Clause of the Fourteenth Amendment. *Id.* ¶ 62.

Mr. Moore seeks declaratory judgment stating that Defendants' restriction of his parenting time without a finding of endangerment, as Mr. Moore believes is required by Indiana law, was unconstitutional under the Fourth and Fourteenth Amendments. He also seeks a court order to "adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy . . . [that] shall have the force and effect of final judgment." *Id.* ¶ b. He further requests compensatory and punitive damages against all Defendants, as well as costs and attorneys' fees (despite his *pro se* status).

On April 12, 2023, Ms. Moore moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). No other Defendant has filed a notice of appearance or otherwise moved to dismiss. As previously noted, Mr. Moore has chosen not to respond to the instant motion. Thus, pursuant to our ongoing obligation to review our jurisdiction *sua sponte*, we undertake that analysis below. *Ricketts v. Midwest Nat'l. Bank*, 874 F.2d 1177, 1181 (7th Cir. 1989); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## LEGAL DISCUSSION & DECISION

Federal district courts "are not vested with appellate authority over state courts." *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741–42 (7th Cir. 2016) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)). The *Rooker-Feldman* doctrine precludes "federal courts from exercising jurisdiction over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced." *Id.* No matter how erroneous or unconstitutional a state court judgment may be, a federal district court simply has no lawful authority to review it. Rather, an aggrieved state court litigant must seek review through the state court system's appellate process and then directly to the United States Supreme Court. *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 603 (7th Cir. 2008); *see also* 28 U.S.C. § 1257 ("Final judgments . . . rendered by the highest court of a State . . . may be reviewed by the Supreme Court by writ of certiorari.").

Application of the *Rooker-Feldman* doctrine proceeds in two steps. First, we evaluate whether the plaintiff seeks to set aside a state court judgment or, instead, presents an independent claim. *Jakupovic*, 850 F.3d at 902–03. Claims directly seeking "to set aside a state court judgment are *de facto* appeals that are barred without further analysis." *Id.* at 902. "Inextricably intertwined" claims, alleging either an injury caused by the state court judgment or, alternatively, an independent, preexisting injury that the state court failed to remedy, are also impermissible. *Sykes*, 837 F.3d at 742 (internal citation omitted). In other words, a state court judgment is "inextricably intertwined" with the federal court lawsuit when there is "no way for the injury complained of by a plaintiff to be separated from a state court judgment." *Id.* If the plaintiff's alleged injury is independent of the state-court judgment, then the *Rooker-Feldman* doctrine poses no jurisdictional barrier. *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023).

Essentially, our core concern in applying *Rooker-Feldman* principles is whether the court is being called upon to review a state court decision. *Id.* If the plaintiff's claims are not independent from the state court judgment, the *Rooker-Feldman* analysis proceeds to step two, requiring the court to evaluate whether the plaintiff had a "reasonable opportunity to raise the issue in state court proceedings." *Jakupovic*, 850 F.3d at 902. The "reasonable opportunity" inquiry engages the "difficulties caused by 'factors independent of the actions of the opposing parties that precluded' a plaintiff from bringing federal claims in state court, such as state court rules or procedures." *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 534–35 (7th Cir. 2004) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999)). "Only if the plaintiff did have such an opportunity does *Rooker-Feldman* strip

9

federal courts of jurisdiction." *Andrade v. City of Hammond, Ind.*, 9 F.4th 947, 950 (7th Cir. 2021).

The *Rooker-Feldman* doctrine is limited: It applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). When "the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction." *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 556 (7th Cir. 2004).

Here, Mr. Moore's underlying child custody case was still pending when he filed this lawsuit on March 31, 2023, which situation hinders a straightforward application of the *Rooker-Feldman* doctrine. However, in confronting this precise issue in *Moore I*, we held that Judge Kern's March 30, 2021, order approving the parties' Mediated Agreement was "a final judgment disposing of the specific custody/parenting time dispute that was the subject of Judge Chavis's interlocutory orders." 2023 WL 3304747, at *10. As explained, the finality of Judge Kern's order was unaffected by the mere possibility of future modifications, by Mr. Moore's motion to modify the custody/parenting time arrangement on March 25, 2022, or by the case's pending status. *Id.* Mr. Moore repeats his claims here, arguing that the parenting time arrangement that was initially set out in Judge Chavis's interlocutory orders and later upheld by Judge Kern was unlawful. "Mr. Moore is thus a 'state court loser,' as that phrase has been used in *Rooker-Feldman* parlance," and his federal lawsuit is subject to the jurisdiction-stripping powers thereof. *Id.*

10

In proceeding to the first step of the *Rooker-Feldman* analysis, we next consider whether Mr. Moore's alleged injury can be separated from the underlying state court judgment. *Sykes*, 837 F.3d at 742. If not, the *Rooker-Feldman* doctrine forecloses our exercise of jurisdiction. *Hadzi-Tanovic*, 62 F.4th at 399.

As we held in *Moore I*, Mr. Moore's alleged injuries are plainly inseparable from Judge Kern's—and, for that matter, Judge Chavis's—child custody decisions. Indeed, the only real difference between the instant lawsuit and *Moore I* is that, here, Mr. Moore targets Judge Kern, rather than Judge Chavis. For example, Count I advances a Section 1983 claim, which, much like the first count in *Moore I*, is based on the state court's failure to make a finding of endangerment before imposing a parenting time supervision requirement. Unlike *Moore I*, however, Mr. Moore names Judge Kern for her "refus[al] to end supervision," not Judge Chavis.

Notwithstanding the switch in named Defendants, Count I fails for the same reason it failed in *Moore I*: In seeking that we "adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy," Mr. Moore directly challenges Judge Kern's order from the state court proceedings. "His alleged injury for which he seeks redress—the imposition of supervised parenting time without a specific finding of endangerment under Indiana Code section 31-17-4-1(a)—flows directly" from Judge Chavis's and Judge Kern's orders. *Moore I*, 2023 WL 3304747, at *11. "Any ruling in favor of Mr. Moore would 'require us to contradict the state court's orders,' but *Rooker-Feldman* bars the review of claims that allege injury caused by a state-court order.' " *Id.* (quoting *Bauer v. Koester*, 951 F.3d 863, 866 (7th Cir. 2020) (internal citations omitted)).

11

In Count II, as in *Moore I*, Mr. Moore seeks relief for the "Financial Deprivation Associated with Denial of Parenting Rights," claiming that he has "incurred great financial cost of paying for the unwarranted Court Orders for Supervised Parenting Time, for various fees associated with requirements by the Court, and for loss of productive time and earnings as a result of continuing to challenge the unwarranted Court Orders for Supervised Parenting Time." Compl. ¶ 54, dkt. 1. He specifies that, since Judge Kern took charge of the case, he has paid at least $2,100.00 for the cost of a third-party supervisor to monitor his parenting time and at least $1,200.00 for Family Reunification Therapy, as required by state court orders. Quite clearly, the alleged financial harm flows directly from state court orders. Mr. Moore further avers an injury in the form of lost productive time and earnings, based on the time he spent "seeking to reverse the unlawful parenting time restriction." *Id.* ¶ 57. As such, Mr. Moore's perceived injury cannot "be separated from [the] state court judgment" and is therefore "inextricably intertwined." *Sykes*, 837 F.3d at 742. Any ruling in Mr. Moore's favor would require us to contradict the state court, which *Rooker-Feldman* forbids.

Mr. Moore's Count III brought against unspecified Defendants for the "Alienation of Affection between Father and Children" is, again, identical to his third count in *Moore I*. Mr. Moore claims that the court-ordered supervision has irreparably harmed his relationships with his children, but, as we have previously explained, "this claim is without doubt inextricably intertwined with [Judge Kern's] orders because the injury Mr. Moore cites—the strained relationship with his children based on the supervision of his time with them—was the consequence of several orders issued by the state court." *Moore I*, 2023 WL

3304747, at *12. We reiterate: Mr. Moore's purported injuries resulted from Judge Kern's orders, and any relief to Mr. Moore would, therefore, require us to contradict the state court's orders. That outcome is squarely prohibited by *Rooker-Feldman*.

Count IV targets the State of Indiana and Judge Kern personally for allegedly violating Mr. Moore's rights under the Equal Protection Clause by "deliberately" withholding review of the parenting time restrictions, as is otherwise made available "for all others." Compl. ¶ 62, dkt. 1. This claim, too, clearly and directly challenges Judge Kern's decisions.

Having determined that Mr. Moore's claims either directly challenge or are inextricably intertwined with state-court orders, we next address whether Mr. Moore had a reasonable opportunity to raise these issues in the state court proceedings. *Jakupovic*, 850 F.3d at 904. Nothing here suggests that Mr. Moore was deprived of a reasonable opportunity to challenge whether the state court was required to make a specific finding of engagement, pursuant to Indiana Code section 31-17-4-1(a). To the contrary, Mr. Moore's own allegations reveal that he repeatedly raised this issue before the Indiana trial and appellate courts—albeit unsuccessfully. On this procedural history, we are satisfied that Mr. Moore has had abundant opportunity to develop these arguments in state court.

Because none of Mr. Moore's claims have survived the jurisdictional analysis, *Rooker-Feldman* instructs that we lack subject-matter jurisdiction over Mr. Moore's lawsuit. His Complaint must be and shall be dismissed for lack of subject-matter jurisdiction.

Before reaching our final conclusion, one point bears repeating: Notwithstanding the *Rooker-Feldman* doctrine, Seventh Circuit precedent as well as the foundational principles of comity, equity, and federalism also compel us to abstain from exercising

jurisdiction. *Moore I*, 2023 WL 3304747, at *12 (quoting *J.B. v. Woodward*, 997 F.3d 714, 723 (7th Cir. 2021)). Abstention is particularly appropriate here, where Mr. Moore's "complaint makes plain that the entire design of his federal action" is to alter the outcome of the state court proceedings. *Id.* (quoting *J.B.*, 997 F.3d at 723). Adjudicating Mr. Moore's claims "threaten[s] interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government—to such a degree as to all but compel the federal judiciary to stand down." *Id.* (quoting *J.B.*, 997 F.3d at 723). Thus, the foundational principles of our federal system dictate that we abstain from exercising jurisdiction over this case.

## CONCLUSION

For the reasons explained above, Mr. Moore's Complaint, dkt. 1, is **DISMISSED** without prejudice for lack of subject-matter jurisdiction. Mr. Moore shall have **FOURTEEN DAYS** in which to show cause why final judgment with prejudice should not enter against him. Ms. Moore's Motion to Dismiss, dkt. 6, is **GRANTED** pursuant to Federal Rule of Civil Procedure 12(b)(1) and the *Rooker-Feldman* doctrine.

IT IS SO ORDERED.

Date: 2/23/2024

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

BRIAN S. MOORE
6038 Primrose Avenue
Indianapolis, IN 46220

Denise Faye Hayden
Denise F. Hayden, Attorney at Law
dhayden@lacylawoffice.com